Opinion issued June 21, 2007






 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00417-CR






RAUL AGUIRRE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 1036528








MEMORANDUM OPINION

 A jury convicted appellant, Raul Aguirre, of aggravated robbery, (1) and the trial
court assessed punishment at eighteen years' imprisonment. In two issues, appellant
argues that his rights under the United States and Texas Constitutions (1) to remain
silent and not give evidence against himself and (2) to the effective assistance of
counsel were violated.

 We affirm.

Facts

 Appellant was charged with robbing Timothy Smith on August 7, 2005 at a flea
market in the Spring Branch area on the northwest side of Houston. At trial, Smith
testified that he was returning to his vehicle in the flea market parking lot when
appellant approached him. Appellant was holding a pistol in one hand and demanded
that Smith hand over the jewelry he was wearing. After Smith handed over his watch
and necklace, appellant jumped into the passenger side of a waiting vehicle and sped
out of the flea market parking lot. Unwilling to part with his possessions, Smith got
into his truck and pursued appellant into the surrounding residential area. At one
point, both appellant and the driver of appellant's car got out of the car and fired at
Smith, leaving bullet holes in Smith's truck. When appellant's vehicle eventually
became disabled, he and his accomplice abandoned it and ran into a nearby apartment
complex. Soon thereafter, the police found appellant hiding in a hedge of bushes
outside a residence near the apartment complex, called him out at gunpoint, and took
him into custody. Police later found appellant's gun in a dryer at the apartment
complex's laundry facility and were given his shirt by area residents who had found
it after appellant's arrest. Police also searched Smith and his vehicle, but found
nothing suspicious.

 Appellant presented a different version of events. At trial, appellant testified
that he met Smith at the flea market and sold him some "turkey dope," a simulated
controlled substance. Appellant claims that Smith had chased him because Smith
discovered that appellant had sold him fake drugs and that Smith had fired a handgun
at him. Appellant claims he fired at Smith in self-defense.

 During its cross-examination of appellant, the State questioned him on various
inconsistencies between his testimony and that of other witnesses. The following
exchange occurred while the State was questioning appellant on the circumstances
surrounding his arrest:

[STATE]: You told the jury you walked out of
somebody's driveway and there the police
were and they arrested you. Isn't that what
you just told them?


[APPELLANT]: Yes.





[STATE]: So, Officer Hamilton must be lying, then,
when he says he saw you under the bushes and
called you out at gunpoint? Is he lying or is he
telling the truth?


[APPELLANT]: He's pretty much telling the truth.


[STATE]: But you would agree with me those two
versions are very different?


[APPELLANT]: Well, he did call me out; but I'm walking out
as he's calling me out.


[STATE]: Mr. Aguirre, this is the first time we're ever
hearing this version of events, isn't it?


[APPELLANT]: I don't know. I don't know what you've
heard.


[STATE]: You've not told another officer -


[TRIAL COUNSEL]: Objection, Your Honor. This is post-contention [sic] silence.


[THE COURT]: Overruled.


[STATE]: You've not told any other officers at any point
in time during this entire process, didn't flag
down an officer along the way, try and find an
officer and tell them what was happening, did
you?


[APPELLANT]: That he was chasing us?


[STATE]: You didn't -


[APPELLANT]: I mean, it was obvious.


[STATE]: You haven't told anybody this story before,
have you?


[APPELLANT]: No.

 On redirect examination of appellant, appellant's trial counsel asked appellant
about the period of time following his arrest. Appellant testified that the police took
him to a witness room so that he could tell his side of the story and read him his
Miranda rights. (2) Appellant did not tell his side of the story at that time because he
wanted to assert his Fifth Amendment right to remain silent. The prosecutor then
conducted the following recross-examination of appellant:

[STATE]: Officer Hamilton arrested you, correct?


[APPELLANT]: Yes.


[STATE]: You didn't tell him this, did you?


[APPELLANT]: No.


[STATE]: Officer Murphy transported you to the
county jail, didn't he?


[APPELLANT]: Yes.


[STATE]: You didn't tell him this, did you?


[APPELLANT]: No.



[STATE]: Officer [P.] Reece with the Robbery
Division of the Houston Police
Department gave you an opportunity to
tell him anything that you wanted to
about what had happened out there that
day, didn't he?


[APPELLANT]: Yes.


[STATE]: And you didn't tell him this, did you?


[APPELLANT]: No. 

The State also questioned Officer Reese regarding appellant's silence. Officer Reese
testified that he only questioned appellant after the arrest was made. In regard to
appellant's testimony, the following exchange took place:[STATE]: Now, Officer Reece, did the defendant ever
tell you during the course of this discussion
with him that he tried to sell Mr. Smith some
[of] what we commonly call turkey dope?


 [OFFICER]: No, he did not.


 [STATE]: Did he tell you that he had brought a cocaine
cutting agent from the flea market and tried to
pass that off to Mr. Smith as cocaine?


 [OFFICER]: No.


 [STATE]: Did he ever tell you that Mr. Smith had
offered up his jewelry as payment for this
turkey dope?


 [OFFICER]: No, he did not.




 [STATE]: Did he ever tell you that Mr. Smith was the
aggressor in this vehicle chase that took place
after what happened at the flea market?


 [OFFICER]: No.

 

 [STATE]: Did he ever tell you that Mr. Smith had a
gun?


 [OFFICER]: No, he did not.


 [STATE]: And did he ever tell you where he got the .45
Ruger semiautomatic pistol that was
recovered in this case?


 [OFFICER]: No.


 [STATE]: Did he ever tell you that he surrendered to the
police voluntarily when they arrested him?


 [OFFICER]: No.


 [STATE]: In fact, did he tell you anything about his side
of the story about what happened out there at
Long Point and the surrounding areas?


 [OFFICER]: No, he did not.

Appellant's trial counsel cross-examined Officer Reece and established that Officer
Reece knew that appellant had been given his Miranda warnings and that appellant
had a right to choose to testify or not. The State then established on redirect that
Officer Reece might have been able to investigate and possibly prove appellant's
claims had appellant given him the information during this interview.

 During the State's closing argument, the following comments were made:

 And how else do we know that what this defendant has told you is the
absolute untruth? Folks, he had an opportunity to tell how many people
this story before today? When Officer Hamilton pulled him out of those
bushes. Not walking out from behind them or walking out the driveway,
whichever version he happened to tell depending on the question; but
when they drew him out of there at gunpoint, he didn't tell Officer
Hamilton. When Officer Murphy had him in the patrol car, taking him
down to 61 Reisner, not a word. And when Officer Reece, who is a
detective with the Robbery Division of the Houston Police Department
gives him an opportunity to tell him anything he wants, I'm here to
listen to whatever you want to tell me.


 Absolutely, folks, he has rights just like every criminal defendant
does. And he has the right to invoke those rights; but doesn't it make
sense if he is truly the victim in this case, he's going to be shouting it
from the mountaintops the first opportunity. He's going to give Officer
Reece an opportunity to follow up on it, to check it out, to go out there,
see if anybody saw anything consistent with this drug deal gone bad. . . . 


 He doesn't ever do it. Y'all were hearing it right along with me. 
That, in and of itself, should tell you all you need to know about the
credibility of this defendant both now and then.

Right to Remain Silent


 In his first issue, appellant argues that his right to remain silent and not give
evidence against himself under the Fifth Amendment of the United States
Constitution and article I, section 10, of the Texas Constitution was violated by the
State's improper questioning of several witnesses, including appellant himself, and
the State's closing argument.

 State Constitutional Arguments

 Appellants who claim both state and federal constitutional protection should
argue each under separate grounds and provide separate substantive analysis for each
ground. Muniz v. State, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993); accord
Heitman v. State, 815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1991) (quoting
McCambridge v. State, 712 S.W.2d 499, 501-02 n.9 (Tex. Crim. App. 1986))
("Attorneys, when briefing constitutional questions, should carefully separate federal
and state issues into separate grounds and provide substantive analysis or argument
on each separate ground."). 

 Here, appellant states in his first point of error that his right to remain silent
and not give evidence against himself was violated under both the United States and
Texas Constitutions, but the analysis he provides under this point of error fails to
differentiate between these separate constitutional authorities. Accordingly, we will
only address appellant's argument under the United States Constitution. See Arnold
v. State, 873 S.W.2d 27, 33 (Tex. Crim. App. 1993) (refusing to examine state
constitutional grounds where appellant failed to analyze, argue, or provide authority
to establish that his protection under the Texas Constitution was different from that
provided by the United States Constitution); Rauscher v. State, 129 S.W.3d 714,
723-24 (Tex. App.--Houston [1st Dist.] 2004, pet. ref'd) (same). 

 Federal Constitutional Arguments

 The United States Supreme Court has held that the Due Process Clause of the
Fourteenth Amendment is violated when a defendant's post-arrest, post-Miranda
silence is used by the State to impeach the defendant. Doyle v. Ohio, 426 U.S. 610,
619, 96 S. Ct. 2240, 2245 (1976); McCreary v. State, 194 S.W.3d 517, 522 (Tex.
App.--Houston [1st Dist.] 2006, no pet.). In the absence of Miranda warnings,
however, the Supreme Court has held that due process permits cross-examination
about post-arrest silence. Fletcher v. Weir, 455 U.S. 603, 607, 102 S. Ct. 1309, 1312
(1982). (3) Pre-arrest silence is also a constitutionally permissible area of inquiry. 
Jenkins v. Anderson, 447 U.S. 231, 238-40, 100 S. Ct. 2124, 2129-30 (1980); Waldo
v. State, 746 S.W.2d 750, 755 (Tex. Crim. App. 1988).

 Appellant complains of three instances in which the judge allowed testimony
that violated his right to remain silent. The first instance occurred during the State's
cross-examination of appellant when the State asked him whether he had ever
mentioned his version of events at any point prior to trial. Appellant's trial counsel
objected to this line of questioning, but the trial court overruled appellant's objection. 
The State finished its question by asking, "You've not told any other officers at any
point in time during this entire process, didn't flag down an officer along the way, try
and find an officer and tell them what was happening, did you?" 

 The second instance occurred during the State's recross-examination of
appellant. The State asked a series of questions that established that appellant had not
mentioned his version of events to any officer that he dealt with during the entire
process. Appellant's trial counsel did not object to any of these questions.

 The third instance occurred during the State's questioning of Officer Reece, the
officer in charge of the investigation. The State asked, "Now, Officer Reece, did the
defendant ever tell you during the course of this discussion with him that he tried to
sell Mr. Smith some [of] what we commonly call turkey dope?" Appellant's trial
counsel did not object to this question. The State continued to question Officer Reece
along the same lines without objection from appellant's trial counsel.

 A timely and reasonably specific objection, followed by an adverse ruling, is
required to preserve error--even constitutional error (4)--for appellate review. Tex. R.
App. P. 33.1(a); Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). 
An appellant must object each time inadmissible evidence is offered, except when
defense counsel requests a running objection or objects out of the presence of the jury
to all testimony on a given subject that he deems objectionable. Martinez v. State, 98
S.W.3d 189, 193 (Tex. Crim. App. 2003); Love v. State, 199 S.W.3d 447, 456 (Tex.
App.--Houston [1st Dist.] 2006, pet. ref'd). When a defendant objects to certain
evidence being introduced in one instance, but the same evidence is introduced from
another source without objection, the defendant is not in a position to complain on
appeal. Hughes v. State, 878 S.W.2d 142, 156 (Tex. Crim. App. 1992).

 Appellant failed to preserve any error arising from the second and third
instances because he did not object at trial. See Tex. R. App. P. 33.1(a)(1)(A);
Heidelberg, 144 S.W.3d at 537. (5) Nor does he argue that the testimony was so
prejudicial that any error could not have been cured by an instruction to disregard. 
See Stanley v. State, 727 S.W.2d 785, 788 (Tex. App.--Houston [1st Dist.] 1987, pet.
ref'd) (stating that "[a]bsent an objection, nothing is presented for review unless the
error was so prejudicial that it could not have been cured by an instruction to
disregard"). Furthermore, the testimony being challenged in all three instances
established the same fact--that appellant had not related his version of events to
anyone prior to his testimony at trial. Because the second and third instances
involved introduction of the same evidence without objection as that admitted in the
first instance and appellant's trial counsel did not request a running objection or
object out of the presence of the jury, (6) any potential error made in overruling the
objection in the first instance is waived. See Hughes, 878 S.W.2d at 156.

 Closing Argument

 Appellant also complains that the State's closing argument was improper.

 In general, to preserve jury argument error, a contemporaneous objection must
be made and an adverse ruling obtained. Tex. R. App. P. 33.1 (stating that to preserve
error for review, party must object and trial court must explicitly or implicitly make
an adverse ruling or refuse to rule on that objection); Cooks v. State, 844 S.W.2d 697,
727 (Tex. Crim. App. 1992). If the trial court sustains the objection, the defendant
must then request an instruction to disregard the argument and, if granted, move for
a mistrial. Cooks, 844 S.W.2d at 727-28. When a defendant fails to object to a jury
argument or fails to pursue an objection to a jury argument to an adverse ruling, he
forfeits his right to complain about the jury argument on appeal. Cockrell v. State,
933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

 During its closing argument, the State argued to the jury that appellant had had
several opportunities to tell his side of the story, but that he never took advantage of
those opportunities. Appellant's trial counsel, however, did not object at any point
during the State's closing argument. Appellant, therefore, has forfeited his right to
complain about the State's jury argument on appeal. See id.; Cooks, 844 S.W.2d at
727-28

 We overrule appellant's first issue.

Right to Counsel

 In his second issue, appellant argues that his right to effective assistance of
counsel under the Sixth Amendment of the United States Constitution and article I,
section 10, of the Texas Constitution was violated.

 "[T]he right to appellate review in this state extends only to complaints made
in accordance with our published rules of appellate procedure . . . ." Narvaiz v. State,
840 S.W.2d 415, 429 (Tex. Crim. App. 1992). The Texas Rules of Appellate
Procedure require that an appellant's brief "contain a clear and concise argument for
the contentions made, with appropriate citations to authorities and to the record." 
Tex. R. App. P. 38.1(h). Appellant's sole briefing on this issue was to list it as an
issue presented, which states: "The Defendant's right to the effective representation
of counsel afforded by the Sixth Amendment of the Constitution of the United States
and Article I, Section 10 of the Constitution of the State of Texas was violated by the
prosecutor." Appellant makes no citation to the record or to any authority to support
this point of error. This issue, therefore, is not properly presented for our review. See
Tex. R. App. P. 38.1(h); Cardenas v. State, 30 S.W.3d 384, 393 (Tex. Crim. App.
2000) (overruling points of error because appellant "inadequately briefed these points
by neglecting to present argument and authorities as required by Texas Rule of
Appellant [sic] Procedure 38.1(h)"); Boler v. State, 177 S.W.3d 366, 373-74 (Tex.
App.--Houston [1st Dist.] 2005, pet. ref'd) (holding that appellant did not meet
burden of showing fundamental error when appellant did not cite authority or make
argument as required by Texas Rule of Appellate Procedure 38.1(h)).

 We overrule appellant's second issue.


Conclusion

 We affirm the judgment of the trial court.


 



 


 Evelyn V. Keyes

 Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Do not publish. Tex. R. App. P. 47.2(b).
1. § 
2. We recognize that the warnings required by article 38.23 of the Texas Code of Criminal
Procedure are more expansive than those required by Miranda v. Arizona, 384 U.S. 436, 479,
86 S. Ct. 1602, 1630 (1966). See Tex. Code. Crim. Proc. Ann. art. 38.22 § 2 (Vernon
2005). At trial, however, both the district attorney and certain witnesses generally referred
to these warnings as Miranda warnings, and we will do the same when referring to such
testimony.
3. We note that protection of a defendant's post-arrest silence under article I, section 10 of the
Texas Constitution is broader than under the United States Constitution. "Article I, section
10 of the Texas Constitution . . . protects a defendant's post-arrest silence even before
[Miranda] warnings have been administered." Heidelberg v. State, 144 S.W.3d 535, 537
(Tex. Crim. App. 2004) (citing Sanchez v. State, 707 S.W.2d 575, 582 (Tex. Crim. App.
1986)).
4. Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).
5. Nor does appellant urge the futility of objection or any other reason for his failure to object. 
See Jackson v. State, 989 S.W.2d 842, 844 (Tex. App.--Texarkana 1999, no pet.) (citing
Black v. State, 816 S.W.2d 350, 368 (Tex. Crim. App. 1991) (Campbell, J., concurring))
(explaining "right-not-recognized" exception to contemporaneous objection rule).
6. See Martinez, 98 S.W.3d at 193; Love, 199 S.W.3d at 456.